IN THE CIRCUIT COURT FOR BALTIMORE CITY

CIMON J. LOVESS )
660 Charraway Road )
Baltimore, Maryland 21229 )
                          )
    Plaintiff, )
                          )
v. )   CIVIL ACTION NO. _____
                          )   **JURY TRIAL DEMANDED**
EXPERT GLOBAL SOLUTIONS, INC. )
Serve:  Corporation Trust Inc. )
        351 W. Camden St. )
        Baltimore, MD 21201 )
                          )
    Defendant. )

## COMPLAINT

COMES NOW the Plaintiff, Cimon J. Lovess, and for her complaint against the Defendant Expert Global Solutions, Inc. alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for statutory and actual punitive damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §13-101 *et seq* ("MCPA") and defamation.

### PARTIES

2. The plaintiff is a natural person and resides in Baltimore, Maryland. She is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3).

3. Defendant is the world's largest debt collection operation and is licensed as a debt collection agency with the state of Maryland. Defendant has several debt collecting subsidiaries, one of which is NCO Financial Systems, Inc. ("NCO"). Defendant a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. S 1692a(6).

1

## FACTS

4. In March 2009 Ms. Lovess fell ill and incurred medical bills with Saint Agnes and Greater Baltimore Medical Center.

5. A discrepancy existed as to whether Loves had outstanding bills with the hospitals. The alleged medical bills were incurred for personal purposes and are a "debt" pursuant to 15 U.S.C. §1692a(5).

6. Thereafter, Ms. Lovess received dunning letters and demands for payment from debt collectors, including the Defendant NCO.

7. Eventually NCO started reporting the debt to Ms. Lovess' credit reports.

8. Although Ms. Lovess disputed she owed the debt or the amount claim, she contacted NCO to resolve the claim and remove it from her credit report.

9. Ms. Lovess and NCO came to an agreement that Lovess would make payments and the debt would be removed from the credit reports.

10. Based upon NCO's representation that the debt would be removed from her credit reports, Ms. Lovess agreed to pay the debts.[1]

11. If NCO did not agree to remove the debt from the credit reports, Ms. Lovess would not have paid NCO for the alleged debts.

12. In March 2014 Ms. Lovess complete an application for a rental property.

13. The application process required Ms. Lovess allow the owner to view her credit score as a determining factor of whether the application would be approved or not.

14. Ms. Lovess' application was perfect except for her credit score.

15. The rental application required a score of 600 or above for approval.

---

[1] Defendant is the recipient of the largest civil penalty ever obtained by the FTC against a debt collector. http://www.ftc.gov/news-events/press-releases/2013/07/worlds-largest-debt-collection-operation-settles-ftc-charges-will

16. Ms. Lovess' application was initially denied by the owner on the basis that her credit score was less than 600.

17. Ms. Lovess was blindsided when she learned from the owner's rental agent that her credit score was a 578, which was well below the benchmark 600 score.

18. The rental agent inform Ms. Lovess that the credit score would potentially cause her application to be denied. Ms. Lovess was surprised to hear that she had such a low score and quickly felt embarrassed. Prior to this revelation, Ms. Lovess appeared to be a stellar applicant. Now she felt as though the rental agent thought she was hiding the fact she had this low credit score.

19. As a result of the 578 credit score the rental agent recommended that the owner deny Ms. Lovess' rental application.

20. Ms. Lovess was devastated when she learned of her low credit score. She feared she would not be approved for the rental home, which was in the same neighborhood as her grandparents. It was important for her to live near family because she just had a baby and she needed her family's help with babysitting and looking after the baby.

21. Compounding her feelings of devastation was the fact that it was the NCO collection accounts that was causing her credit score to fall below 600. She was beyond outraged when she found out that she had been conned by NCO. She felt helpless as to what she could do to remedy the situation.

22. On top of fearing she would denied the rental application, she began worrying about whether her employment prospects would be detrimentally affected by the low credit score. Ms. Lovess did not know what to do.

23. Each day that Ms. Lovess waited to her back on her application was a day full of agony. As time went by she felt worse and worse. She constantly braced herself mentally for the inevitable denial.

24. As the days went on she decided to contact the owner directly to explain the credit score. She was unable to speak directly with the owner but did manage to leave a voicemail for the owner. In that voicemail she let it all out. She explained how she had become very sick during that time period when the hospital bills accrued. She further explained that she disputed some or all of the bills or at least the amounts claimed that were owed. Then she explained that she thought she had worked out the situation and had the information removed from her credit report. She concluded by requesting the owner consider her stellar rental history and savings as the true depiction of financial responsibility.

25. The owner decided to approve Ms. Lovess' application despite the dismal credit score. The owner did directly reach out to Ms. Lovess to tell her that she need to improve her credit score.

25. On October 31, 2014 Ms. Lovess disputed the NCO collection accounts. She sent a letter directly to NCO and a letter to each credit bureau.

26. The letter disputed that NCO actually owned or had authority to collect the debt. Her next contention of dispute was that NCO agreed to remove the collection account from her report after she paid the alleged debt.

27. NCO responded by sending a letter that stated the NCO collection accounts had been removed from her credit report.

28. The credit bureaus also responded by stating the NCO collection accounts were deleted or no longer on her credit report.

29. Upon information and belief NCO did not obtain the debts it was seeking to collect. NCO maliciously reported the debts as an attempt to coerce Ms. Lovess into paying NCO.

30. Upon information and belief NCO deleted the collection accounts because it never had authority to collect the debt and knew it agreed to remove it from the credit report.

### COUNT ONE: VIOLATIONS OF MCPA

31. Plaintiff realleges and incorporates paragraphs 1 through 30 above as if fully set out herein.

32. NCO violated the MCPA by misleading the Plaintiff to believe that NCO would remove the collection account from the credit report in exchange for the Plaintiff's payment of the debt.

33. Plaintiff paid NCO nearly $1,500 under the belief that it would resolve the credit report issue.

34. NCO also violated the MCPA §13-301(13)(iii) when it violated the MCDCA at §14-202(8) by claiming a right to collect the debt while knowing it had no legal right to collect the debt.

35. As a result of the conduct, actions and inactions of NCO, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: a loss of $1,500, frustration, anger, humiliation, embarrassment, headaches, sleeplessness, depression, severe mental distress and severe emotional distress.

36. NCO's conduct was the proximate cause of Plaintiff's injuries, rendering NCO liable for actual damages of $10,000 pursuant to MCDCA at §14-203 and MCPA at §13-408(a), and for attorney's fees in the event she retains counsel pursuant to MCPA, §13-408(b).

## COUNT TWO: VIOLATIONS OF FDCPA

37. Plaintiff realleges and incorporates paragraphs 1 through 36 above as if fully set out herein.

38. NCO does not have a legal right to the debt, thus the Plaintiff was never indebted to NCO.

39. NCO knows that it does not have a legal right to the debt.

40. NCO also knows that it agreed to remove the false debt from the credit report.

41. Therefore, NCO violated 15 U.S.C. §1692e(8) by communicating credit information to the credit bureaus that was known to be false.

42. Plaintiff seeks actual damages in an amount of $8,500, statutory damages in an amount of $1,000 and reserves her right to seek reasonable attorney's fees in the event she obtains counsel.

## COUNT THREE: DEFAMATION

43. Plaintiff realleges and incorporates paragraphs 1 through 42 above as if fully set out herein.

44. NCO intentionally and maliciously instructed the credit bureaus to report publicly that Plaintiff had a collection account.

45. NCO's statements to the credit bureaus that Plaintiff had a collection account were falsely published without a privilege.

46. As a result of NCO's publication, Plaintiff's has suffered $7,500 in actual damages including but not limited to: out-pocket expenses, frustration, upset, humiliation and embarrassment, emotional and mental pain and suffering.

47.  NCO's conduct was the proximate cause of Plaintiff's injuries, rendering NCO liable for compensatory damages.

WHEREFORE, Plaintiff requests $26,000 in actual damages; $1,000 in statutory damages; costs for prosecuting this action; and Plaintiff reserves her right to request legal fees in the event she retains an attorney.

**TRIAL BY JURY IS DEMANDED.**

Dated: January 9, 2015

Respectfully submitted,

**CIMON J. LOVESS**

*[signature]*

Cimon J. Lovess
660 Charraway Road
Baltimore, MD 21229
Tel: 443-248-2609

*Pro Se Plaintiff*